MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: ANNA E. ARREOLA
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2218

07 CIV 95

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OCT 26 2007
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES OF AMERICA

-v-

[REDACTED], SUNNY ISLES BEACH, FLORIDA 33160, AND

[REDACTED], BOSTON, MASSACHUSETTS 02134,

Defendants-in-rem.

07 Civ.

VERIFIED COMPLAINT

Plaintiff United States of America, by its attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

I. NATURE OF THE ACTION

1. This is an action by the United States of America seeking forfeiture of the single family residences located at:

a. [REDACTED], Sunny Isles Beach, Florida 33160 (the "FLORIDA PROPERTY"), and

b. [REDACTED], Boston, Massachusetts 02134 (the "MASSACHUSETTS PROPERTY")

(collectively, the "DEFENDANT PROPERTIES"). The DEFENDANT PROPERTIES are subject to forfeiture, pursuant to 21 U.S.C. §§

881(a)(6) and (7) and 18 U.S.C. § 985, as property furnished or intended to be furnished in exchange for a controlled substance, as proceeds traceable to such an exchange, and/or as property used or intended to be used to facilitate such an exchange. The DEFENDANT PROPERTIES are also subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions conducted in violation of 18 U.S.C. §§ 1956 and 1957, and as property traceable to such property.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

## III. PROBABLE CAUSE FOR FORFEITURE

### A. THE RENTERIA FAMILY

4. Carlos Alberto Renteria Mantilla, a/k/a "Beto Renteria," ("Renteria-Mantilla") is a Colombian drug trafficker responsible for the importation of hundreds of thousands of kilograms of cocaine from Colombia to the United States.

5. Renteria-Mantilla has been indicted in the District of Columbia on drug trafficking and racketeering charges. The indictment alleges that, between 1990 and May 2004, the defendants, including Renteria-Mantilla, engaged in

international drug trafficking, conspired to import cocaine into the U.S., and conspired to possess cocaine with the intent to distribute it in the U.S. The indictment references the importation of in excess of 1.2 million pounds of cocaine into the United States, valued in excess of $10 billion.

6. Renteria-Mantilla has also been indicted in the Southern District of Florida for conspiring, between 1985 and 1994, to import and to possess with intent to distribute cocaine. The United States Department of State is offering up to $5 million for information leading to Renteria-Mantilla's arrest.

7. Renteria-Mantilla has used the services of money brokers to return drug proceeds to Colombia, through a system called the Black Market Peso Exchange ("BMPE"). The BMPE refers to a system that money brokers have developed in order to circumvent the Colombian banking system and the scrutiny of Colombian authorities, which impose costs on the purchase of U.S. dollars and U.S. goods. In the BMPE, business persons in Colombia pay Colombian pesos to money brokers for the purchase of U.S. goods. The money brokers obtain U.S. dollars from drug traffickers in exchange for the Colombian pesos. In this way, the business persons are able to avoid the costs imposed by Colombian banks and Colombian authorities on the purchase of U.S. dollars and U.S. goods, and the drug traffickers are able to convert U.S. dollars into Colombian pesos.

8. Another method used to launder drug proceeds is through the cash purchase of money orders in a manner that avoids the federal reporting requirements. Federal laws and regulations require financial institutions that engage in a cash transaction to sell money orders in amounts or denominations of $3,000 or more to record certain information and verify the purchaser's identity. Money launderers structure money order purchases in order to avoid detection by breaking down purchases into amounts just under $3,000.

9. In March 2005, the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, named Renteria-Mantilla as a "principal Specially Designated Narcotics Trafficker" ("SDNT"). This designation freezes all property owned or controlled by Renteria-Mantilla and prohibits U.S. persons, including companies or financial institutions, from engaging in any transactions, financial or otherwise, with Renteria-Mantilla. That same month, OFAC also designated as SDNTs Maria Nury Caicedo Gallego ("Caicedo")--who was the common-law wife of Renteria-Mantilla--and their daughter, Beatriz Eugenia Renteria Caicedo ("Beatriz Renteria").

B. <u>THE DEFENDANT PROPERTIES</u>

10. Upon information and belief, Caicedo has never been employed, except for businesses owned or controlled by Renteria-Mantilla. Her only source of income has been from

Renteria-Mantilla's drug trafficking organization.

11. Caicedo and Renteria-Mantilla separated in 1995. However, she continued to receive income from Renteria-Mantilla, and she acquired all of her assets using proceeds from Renteria-Mantilla's drug trafficking organization. Caicedo used proceeds from Renteria-Mantilla's organization to purchase properties and fund bank accounts in the United States and other parts of the world, in order to protect the assets from law enforcement. Caicedo's daughter, Beatriz Renteria, also funded bank accounts in the United States using proceeds of Renteria-Mantilla's drug organization.

12. Upon information and belief, drugs from Renteria-Mantilla's drug organization were distributed in, among other places, the Southern District of New York. Bank records for an account held in the name of Beatriz Renteria and her grandmother, Ana Caicedo de Gallego, in Miami, Florida, show that numerous structured money orders were deposited into the account. Some of the structured money orders were purchased, using drug proceeds, in the Southern and Eastern Districts of New York.

13. Caicedo acquired the FLORIDA PROPERTY in or about April 2002, via a quitclaim deed.

14. Caicedo purchased the MASSACHUSETTS PROPERTY in or about June 2002, for $472,000, via a quitclaim deed.

## IV. CLAIMS FOR FORFEITURE

15. The DEFENDANT PROPERTIES are subject to forfeiture pursuant to the following statutory provisions:

**Title 18, United States Code, Section 981(a)(1)(A) of**

16. 18 U.S.C. § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of . . . section 1956, 1957 . . . of this title, or any property traceable to such property."

17. 18 U.S.C. § 1956(a) provides criminal penalties for:

> (a)(1) [w]hoever knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity -
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity . . . or
>
> (B) knowing that the transaction is designed in whole or in part -- (i) to conceal or disguise the nature, the location, the source of ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law.

18. A "financial transaction," as defined by 18 U.S.C. § 1956(c)(4), includes "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more

monetary instruments . . . ."

19. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1). Section 1961(1) lists as an offense "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States."

20. In addition, 18 U.S.C. § 1957 imposes a criminal penalty upon any person who "knowingly engages in or attempts to engage in a monetary transaction in criminally derived property that is of a value of greater than $10,000 and is derived from specified unlawful activity."

21. The DEFENDANT PROPERTIES are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 and/or property traceable to such property.

**Title 21, United States Code, Section 881**

22. Under 21 U.S.C. § 881(a)(6), all moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and moneys used or intended to be used to facilitate a violation of the federal narcotics laws are subject to seizure and forfeiture to the United States, and no property right exists in such proceeds.

23. Section 881(a)(7) also subjects to forfeiture "[a]ll real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment."

24. Pursuant to 18 U.S.C. § 985(c)(1), the first step in initiating a civil forfeiture action against real property is the filing of a complaint for forfeiture.

25. The DEFENDANT PROPERTIES are subject to forfeiture, pursuant to 21 U.S.C. §§ 881(a)(6) and (7) and 18 U.S.C. § 985, as property furnished or intended to be furnished in exchange for a controlled substance, as proceeds traceable to such an exchange, and/or as property used or intended to be used to facilitate such an exchange.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the DEFENDANT PROPERTIES and that all persons having an interest in the DEFENDANT PROPERTIES be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the DEFENDANT PROPERTIES to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated: New York, New York
October 22, 2007

MICHAEL J. GARCIA
United States Attorney for
Plaintiff United States of America

By: Anna E. Arreola
ANNA E. ARREOLA (AA-6193)
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2218

VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK :
SOUTHERN DISTRICT OF NEW YORK )

COLLEEN C. FORGETTA, being duly sworn, deposes and says that she is a Special Agent with Immigration and Customs Enforcement ("ICE"); that she has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of her knowledge, information and belief.

The sources of deponent's information and the grounds of her belief are her personal involvement in the investigation, conversations with and documents prepared by law enforcement officers and others, and documents obtained pursuant to subpoena.

COLLEEN C. FORGETTA
Special Agent
Immigration and Customs Enforcement

Sworn to before me this
22nd day of October 2007

Notary Public

Notary Public, State of New York
No. [illegible]
Qualified in New York County
Commission Expires [illegible]