IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Civil No. 07-cv-09577-JGK

ALL RIGHT, TITLE AND INTEREST
IN REAL PROPERTY AND
APPURTENANCES LOCATED AT
18801 COLLINS AVENUE, APARTMENT
322-3, SUNNY ISLES BEACH, FLORIDA
33160, AND

ALL RIGHT, TITLE AND INTEREST
IN REAL PROPERTY AND
APPURTENANCES LOCATED AT'
85 BRAINERD ROAD, TOWNHOUSE 9,
BOSTON, MASSACHUSETTS 02134

Defendants-in-rem.

## CLAIM OF WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR REGISTERED HOLDERS OF OPTION ONE MORTGAGE LOAN TRUST 2002-5, ASSET-BACKED CERTIFICATES, SERIES 2002-5

Submitted by:
Steven J. Baum, P.C.
*Attorneys for Wells Fargo Bank Minnesota, National Association, as Trustee*
*for Registered Holders of Option One Mortgage Loan Trust 2002-5, Asset-Backed*
*Certificates, Series 2002-5*
220 Northpointe Parkway, Suite G
Amherst, NY 14228
Telephone: (716) 204-2400
Facsimile: (716) 204-4600

By: _____
         Amy E. Przewozny, Esq.
         AP0026
         aprzewozny@mbaum.com

1

COMES NOW Claimant, Wells Fargo Bank Minnesota, National Association, as Trustee for Registered Holders of Option One Mortgage Loan Trust 2002-5, Asset-Backed Certificates, Series 2002-5 ("Wells Fargo"), located at c/o Litton Loan Services LP, 4828 Loop Central Drive, Houston, Texas 77081, pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, with respect to its mortgage lien interest in the real property known as 85 Brainerd Road, Townhouse 9, Boston, MA 02134 (the "Massachusetts Property"), which the United States of America seeks to forfeit in this case, Wells Fargo being an innocent third party with respect to the Massachusetts Property and being a mortgage lien holder having a legal right, title and interest in the Massachusetts Property superior to any right, title or interest of Maria N. Caicedo.

1.    Wells Fargo asserts its interest in the Massachusetts Property sought to be forfeited in this matter and legally described as set forth in Exhibit "A" hereto.

2.    On or about June 21, 2002, Maria N. Caicedo executed and delivered to Option One Mortgage Corporation a certain Adjustable Rate Note (the "Note") in the principal amount of $221,800.00, a true and correct copy of which is attached hereto as Exhibit "B".

3.    The Note was and is secured by a Mortgage (the "Security Instrument") dated June 21, 2002. A true and correct copy of the Security Instrument is attached hereto as Exhibit "C".

4.    Pursuant to an Assignment of Mortgage (the "Assignment") dated June 27, 2002   , Option One Mortgage Corporation transferred and assigned the Note

and Security Instrument to Wells Fargo. A true and correct copy of the Assignment is attached hereto as Exhibit "D".

5.      Wells Fargo is the current holder of the Note and Security Instrument, as currently being serviced by Litton Loan Servicing, LP ("Litton").

6.      Pursuant to a Limited Power of Attorney dated July 20, 2006, Wells Fargo appointed Litton as its attorney-in-fact. A true and correct copy of the Limited Power of Attorney is annexed hereto as Exhibit "E".

7.      There is presently due and owing on the Note a principal balance of $214,997.14, together with accrued and unpaid interest calculated at the contractual rate under the Note and Security Instrument of 6.950% per annum, for a per diem of $40.94, due and accruing from March 1, 2005 to the date of payment thereof, plus a current negative escrow balance in the amount of $16,817.12, plus late charges and other items which continue to accrue and are secured by the Note and Security Instrument until the date of payment, including, but not limited to, property inspections, property preservation, foreclosure fees and costs, plus future advances for taxes, insurance and maintenance of the Massachusetts Property. A true and correct copy of a Payoff Statement good through April 30, 2008, is annexed hereto as Exhibit "F".

8.      Wells Fargo has a vested, legal right, title and interest in the Massachusetts Property that is superior to any right, title, or interest of Maria N. Caicedo, sought to be forfeited in this matter.

9.      Wells Fargo requests that the Court recognize its interest in the Massachusetts Property and order that it be compensated in full for that interest.

STATE OF TEXAS
COUNTY OF HOUSTON

    I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on April **25**, 2008.

LITTON LOAN SERVICING, LP,
*Attorney-in-Fact for* WELLS FARGO
 BANK MINNESOTA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
REGISTERED HOLDERS OF OPTION
ONE MORTGAGE LOAN TRUST 2002-5,
ASSET-BACKED CERTIFICATES,
SERIES 2002-5

By: _____
Name: Christopher Wyatt
Title:  Vice President

STATE OF TEXAS      )
COUNTY OF HOUSTON  ) SS.:

On the **25th** day of April, 2008 before me, the undersigned, personally appeared Christopher Wyatt, personally known or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument and that such individual(s) made such appearance before the undersigned in the City/Town of Houston and State of Texas

Notary Public

JUDY A. TIDWELL
Notary Public State of Texas
My Commission Expires
06-23-2009

TO:  **ANNA E. ARREOLA, ESQ.**
*Assistant United States Attorney*
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2218
Facsimile: (212) 637-2527

**OFFICE OF THE CLERK OF THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF NEW YORK**
500 Pearl Street
New York, New York 10007

**Exhibit A**

Exhibit A

Townhouse Unit #9 at 85 Brainerd Road, Boston, Massachusetts 02135 ("Unit") of the Condominium known as Redstone Court Condominium ("Condominium") Boston, Suffolk County, Massachusetts a Condominium established by the Grantor pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated September 30, 1986 and recorded on October 1, 1986, with Suffolk Registry of Deeds in Book 12920, Page 120, as amended by amendment to Master Deed Creating Phase 2 dated November 25, 1986 and recorded with said Deeds on March 16, 1987 as Instrument No. 558 (as amended, the "Master Deed"), which Unit is shown on floor plans recorded simultaneously with the Master Deed and on the copy of the portion of said plans attached t other deed to the Grantor, to which is affixed the verified statement of a registered architect and engineer in the form required by Section 9 of said Chapter 183A.

The Condominium consists of the land with the buildings, improvements and structures hereon shown on a plan entitled "Site Plan, Redstone Court Condominium, Boston, (Brighton), Massachusetts" dated September 17, 1986 prepared by Bradford Soviets & Associates, Inc., recorded with Said master Deed, together with such other buildings, improvements, and structures shown on said Site plan as maybe from time to time added to the Condominium in accordance with the Master Deed.

Said Unit is conveyed together with:

1.   An undivided .01485 percentage interest in the common areas and facilities of the condominium ad defined and described in said Master Deed, attributable to the Unit as that undivided interest may change upon amendment of said Master Deed pursuant to Sections 15 and 16 and Schedule B. Thereof.

No use may be made of the Unit except as for residential purposes and as permitted by the Master Deed and By-Laws of the Condominium.  The Unit may not be used for any purpose prohibited by any law, rule, regulation or governmental authority or by any agency having jurisdiction over the land, or the condominium, to permit any nuisance, offensive odor or fumes or hazards to health, or to keep any flammable, combustible or explosive fluid, material, chemical or substance therein.  No structural alteration or addition to the Unit shall be made without the prior written permission of the managing board of the condominium.

**Exhibit
B**

Loan Number:  201016319          Servicing Number:  647331-8          Date:  06/21/02

## ADJUSTABLE RATE NOTE
### (LIBOR Index – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

*TRUE AND CERTIFIED COPY*
*LAW OFFICES OF DANIEL W. MURRAY*

85  BRAINERD ST., UNIT 9,  ALLSTON, MA 02134-4563
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S.     $221,800.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
          Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**
     Interest will be charged on unpaid principal until the full amount of principal has been paid.  Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of     6.950%          . The interest rate I will pay may change in accordance with Section 4 of this Note.
     The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.     PAYMENTS**
     **(A) Time and Place of Payments**
     I will pay principal and interest by making payments every month.
     I will make my monthly payments on the first day of each month beginning on     August 01      , 2002      .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
     July 01          , 2032          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at     OPTION ONE MORTGAGE CORPORATION
     DEPARTMENT 7821, LOS ANGELES, CA 90084-7821
or at a different place if required by the Note Holder.
     **(B) Amount of My Initial Monthly Payments**
     Each of my initial monthly payments will be in the amount of U.S.     $1,468.20          . This amount may change.
     **(C) Monthly Payment Changes**
     Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
     **(D) Application of Payments**
     Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     **(A) Change Dates**
     The interest rate I will pay may change on the first day of          July 01          ,     2005          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
     **(B) The Index**
     Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in whichthe Change Date occurs is called the "Current Index."
     If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
     **(C) Calculation of Changes**
     Before each Change Date, the Note Holder will calculate my new interest rate by adding
               FOUR AND 15/100                    percentage point(s) (    4.150%     ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
     The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**MASSACHUSETTS ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family**
MANT0021.wp (02-12-02)

Loan Number:  201016319          Servicing Number:  647331-8          Date:  06/21/02

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    9.950%    or less than    6.950%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    12.950%    or less than    6.950%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If within    36 Months    from the date of execution of the Security Instrument I make a full prepayment or a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. If I make a prepayment within the first year, for any reason, I will be required to pay the lesser of the balance of the first year's interest, or three (3) months' interest on the amount prepaid, computed at the interest rate in effect at the time of prepayment.

Notwithstanding the foregoing, however, if I make a prepayment within the first year for the purpose of refinancing the loan with another financial institution, I will be required to pay an additional three (3) months' interest on the amount prepaid, computed at the interest rate in effect at the time of prepayment. If the loan is prepaid by refinancing with another financial institution from the 13 month to    36 Month    , the maximum penalty will be three (3) months' interest compounded at the interest rate in effect at the time of prepayment. In no event will such a charge be made unless it is authorized by state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MANT6022.wp (02-12-02)

Loan Number:  201016319        Servicing Number:  647331-8        Date:  06/21/02

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
MARIA N  CAICEDO                -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                                        -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                                        -Borrower                                              -Borrower

                                                                        [Sign Original Only]

_____
Daniel W. Murray  witness

**Exhibit
C**

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57076
IRVINE, CA 92619-7076

ATTN:   QUALITY CONTROL

Loan Number:  201016319
Servicing Number:  647331-8

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on    June 21, 2002         . The mortgagor is
MARIA N  CAICEDO

("Borrower"). This Security Instrument is given to
    Option One Mortgage Corporation, a California Corporation                    ,
which is organized and existing under the laws of        CALIFORNIA                , and whose address is
                        3 Ada,  Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
        TWO HUNDRED TWENTY ONE THOUSAND EIGHT HUNDRED
                        . .  AND NO/100THs   Dollars (U.S.   $221,800.00           ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on      July 01, 2032        .This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in        Suffolk                                        County, Massachusetts:
21/01515

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of        85  BRAINERD ST., UNIT 9, ALLSTON
                                                            [Street, City]

Massachusetts      02134-4563       ("Property Address");
                [Zip Code]   .

TOGETHER WITH all the improvements now or hereafter erected on the property  and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6                                                                MAD10011 (04-22-99)

Loan Number: 201016319        Servicing Number: 647331-8        Date: 06/21/02

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                                MAD10012 (04-22-99)

Loan Number:  201016319        Servicing Number:  647331-8            Date:  06/21/02

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence  and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6                                                                                               MAD10013 (04-22-99)

Loan Number:  201016319          Servicing Number:  647331-8          Date:  06/21/02

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

Page 4 of 6                                                                                     MAD10014 (04-22-99)

Loan Number: 201016319          Servicing Number: 647331-8          Date: 06/21/02

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest

thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

MAD10015 (04-22-99)

Loan Number:  201016319          Servicing Number:  647331-8          Date:  06/21/02

[Check applicable box(es)]

☒ Adjustable Rate Rider          ☒ Condominium Rider          ☐ 1-4 Family Rider
☐ No Prepayment Penalty Option Rider     ☐ Planned Unit Development Rider     ☐ Occupancy Rider
☐ Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                              -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____ (Seal)   _____ (Seal)
MARIA N  CAICEDO              -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                              -Borrower                                    -Borrower


COMMONWEALTH OF MASSACHUSETTS,                     County ss: Norfolk

On this     21st     day of     June          , 2002   , before me personally appeared

Maria N. Caicedo

acknowledged the foregoing to be     her          free act and deed.

My Commission Expires:

                                        _____
                                        Notary Public

                                        Daniel W. Murray, Esq.
                                        Notary Public
                                        My Commission Expires Dec. 15, 2006


MAD10016 (04-22-99)

Loan Number: 201016319    Servicing Number:  647331-8    Date:    06/21/02

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made    June 21, 2002        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
    Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:        85  BRAINERD ST., UNIT 9,  ALLSTON, MA 02134-4563

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:    REDSTONE COURT CONDO ASSOC

[Name of Condominium Project]

(the "Condominium Project").  If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  Condominium Obligations.  Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents.  The "Constituent Documents" are the:  (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents.  Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.  Hazard Insurance.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:
        (i) Lender waives the provision in Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and
        (ii) Borrower's obligation under Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.
In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.
C.  Public Liability Insurance.  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.
D.  Condemnation.  The proceeds of any award or claim for damages, direct or consequential,

MULTISTATE CONDOMINIUM RIDER–Single Family–FNMA/FHLMC UNIFORM INSTRUMENT    Form 3140 9/90
Page 1 of 2    USRI0101 (01-15-97)



Loan Number: 201016319    Servicing Number: 647331-8    Date: 06/21/02

payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Covenant 10.

    E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

        (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

        (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

        (iii) termination of professional management and assumption of self-management of the Owners Association; or

        (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____    _____
MARTA N  CALCEDO            -Borrower                                -Borrower


_____    _____
                            -Borrower                                -Borrower


_____    _____
                            -Borrower                                -Borrower


MULTISTATE CONDOMINIUM RIDER–Single Family–FNMA/FHLMC UNIFORM INSTRUMENT FORM 3140 9/90
Page 2 of 2                                                USRI0102 (01-10-97)

Loan Number:  201016319     Servicing Number:  647331-8      Date:  06/21/02

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  June 21, 2002
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

             85  BRAINERD ST., UNIT 9,  ALLSTON, MA 02134-4563

                                [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of       6.950%            . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES
       (A) Change Dates
       The interest rate I will pay may change on the first day of   July        2005        ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
       (B) The Index
       Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
       If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
       (C) Calculation of Changes
       Before each Change Date, the Note Holder will calculate my new interest rate by adding
       FOUR AND 15/100                       percentage point(s) ( 4.150%     )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX – Single Family
Page 1 of 3                                              USRI0021 (02-23-99)

**Loan Number:** 201016319    **Servicing Number:** 647331-8    **Date:** 06/21/02

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.950% or less than 6.950% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 12.950% or less than 6.950% .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number:  201016319     Servicing Number:  647331-8          Date:  06/21/02

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
MARIA  N   CAICEDO

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3

USRI0023 (02-23-99)

Exhibit A

Townhouse Unit #9 at 85 Brainerd Road, Boston, Massachusetts 02135 ("Unit") of the Condominium known as Redstone Court Condominium ("Condominium") Boston, Suffolk County, Massachusetts a Condominium established by the Grantor pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated September 30, 1986 and recorded on October 1, 1986, with Suffolk Registry of Deeds in Book 12920, Page 120, as amended by amendment to Master Deed Creating Phase 2 dated November 25, 1986 and recorded with said Deeds on March 16, 1987 as Instrument No. 558 (as amended, the "Master Deed"), which Unit is shown on floor plans recorded simultaneously with the Master Deed and on the copy of the portion of said plans attached t other deed to the Grantor, to which is affixed the verified statement of a registered architect and engineer in the form required by Section 9 of said Chapter 183A.

The Condominium consists of the land with the buildings, improvements and structures hereon shown on a plan entitled "Site Plan, Redstone Court Condominium, Boston, (Brighton), Massachusetts" dated September 17, 1986 prepared by Bradford Soviets & Associates, Inc., recorded with Said master Deed, together with such other buildings, improvements, and structures shown on said Site plan as maybe from time to time added to the Condominium in accordance with the Master Deed.

Said Unit is conveyed together with:

1.   An undivided .01485 percentage interest in the common areas and facilities of the condominium ad defined and described in said Master Deed, attributable to the Unit as that undivided interest may change upon amendment of said Master Deed pursuant to Sections 15 and 16 and Schedule B. Thereof.

No use may be made of the Unit except as for residential purposes and as permitted by the Master Deed and By-Laws of the Condominium.  The Unit may not be used for any purpose prohibited by any law, rule, regulation or governmental authority or by any agency having jurisdiction over the land, or the condominium, to permit any nuisance, offensive odor or fumes or hazards to health, or to keep any flammable, combustible or explosive fluid, material, chemical or substance therein.  No structural alteration or addition to the Unit shall be made without the prior written permission of the managing board of the condominium.

**Exhibit
D**

**RECORDING REQUESTED BY:**
Option One Mortgage Corporation
3 Ada, Irvine, CA 92618
ATTN: QUALITY CONTROL

14395081 

Loan Number: 201016319
Servicing Number: 6473318

——— [Space Above This Line For Recording Data] ———

# ASSIGNMENT OF MORTGAGE

Option One Mortgage Corporation, A California Corporation                         holder of a real estate mortgage
from : MARIA N CAICEDO

dated : **6/21/02**           recorded with the    ALLSTON           District,           Suffolk
County Registry of Deeds on      **6/21/02**       as Instrument Number  **166**
and in Book                      , Page                   and/or Certificate of Title No.
assigns said mortgage and   the Note and claim secured thereby to:

**WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR
REGISTERED HOLDERS OF OPTION ONE MORTGAGE LOAN TRUST 2002-5,
asset-BACKED CERTIFICATES, SERIES 2002-5,**

whose address is:

In witness whereof the said        OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION
has caused its  corporate seal to be hereto affixed and these presents to be signed, this            27th
day of June ,                  2002 .
    **LEGAL DESCRIPTION AS DESCRIBED ON MORTGAGE REFERRED TO HEREIN**
Property Address:    85  BRAINERD ST., UNIT 9  ALLSTON, MA  021344563
Prior Assignments:

TO HAVE AND TO HOLD THE SAME, forever, subject, nevertheless to the conditions therein contained.

Signed and sealed in the presence of :

Witness

_____          OPTION ONE MORTGAGE CORPORATION,
                                                              a California Corporation
Peggy Bartel

                                              By: _____
_____               Linda C. Kerr            , Assistant Secretary
Jeramy Brown

This Instrument Prepared By: Option One Mortgage Corporation, A California Corporation   Address: 3 Ada, Irvine, CA 92618
Phone: (800)704-0800

——— [Space Below This Line For Acknowledgment] ———

Commonwealth/State of California, County of _____ Orange _____ }SS:
    On    June 27, 2002                                        before me, the undersigned, a Notary Public
in and for said State, personally appeared  Linda C. Kerr                   ,  Assistant Secretary
Option One Mortgage Corporation, A California Corporation
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and

Exhibit A

Townhouse Unit #9 at 85 Brainerd Road, Boston, Massachusetts 02135 ("Unit") of the Condominium known as Redstone Court Condominium ("Condominium") Boston, Suffolk County, Massachusetts a Condominium established by the Grantor pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated September 30, 1986 and recorded on October 1, 1986, with Suffolk Registry of Deeds in Book 12920, Page 120, as amended by amendment to Master Deed Creating Phase 2 dated November 25, 1986 and recorded with said Deeds on March 16, 1987 as Instrument No. 558 (as amended, the "Master Deed"), which Unit is shown on floor plans recorded simultaneously with the Master Deed and on the copy of the portion of said plans attached t other deed to the Grantor, to which is affixed the verified statement of a registered architect and engineer in the form required by Section 9 of said Chapter 183A.

The Condominium consists of the land with the buildings, improvements and structures hereon shown on a plan entitled "Site Plan, Redstone Court Condominium, Boston, (Brighton), Massachusetts" dated September 17, 1986 prepared by Bradford Soviets & Associates, Inc., recorded with Said master Deed, together with such other buildings, improvements, and structures shown on said Site plan as maybe from time to time added to the Condominium in accordance with the Master Deed.

Said Unit is conveyed together with:

1.   An undivided .01485 percentage interest in the common areas and facilities of the condominium ad defined and described in said Master Deed, attributable to the Unit as that undivided interest may change upon amendment of said Master Deed pursuant to Sections 15 and 16 and Schedule B. Thereof.

No use may be made of the Unit except as for residential purposes and as permitted by the Master Deed and By-Laws of the Condominium.  The Unit may not be used for any purpose prohibited by any law, rule, regulation or governmental authority or by any agency having jurisdiction over the land, or the condominium, to permit any nuisance, offensive odor or fumes or hazards to health, or to keep any flammable, combustible or explosive fluid, material, chemical or substance therein.  No structural alteration or addition to the Unit shall be made without the prior written permission of the managing board of the condominium.

**Exhibit E**

RECORDING REQUESTED BY &
AFTER RECORDING RETURN TO:
LITTON LOAN SERVICING LP
4828 Loop Central Drive
Houston, TX 77081
Attn: Alison S. Walas  Prepared By: V. Kim P

## LIMITED POWER OF ATTORNEY

**Wells Fargo Bank, N.A.** successor by merger to Wells Fargo Bank Minnesota, National Association, (the "Principal")(formerly known as Norwest Bank Minnesota, N.A.), in its capacity as trustee under that certain Servicing Agreement relating to **Option One Mortgage Loan Trust, Series 2002-5** dated as of **July 1, 2002** (the "Agreement") by and among **Option One Mortgage Securities Corp** ("Issuer") and **Option One Mortgage Corp** ("Servicer") and Wells Fargo Bank, N.A. (Trustee).

hereby constitutes and appoints:

### LITTON LOAN SERVICING, LP

its true and lawful attorney-in-fact (the "Attorney-in-Fact"), acting by and through its officers and employees, with full authority and power to execute and deliver on behalf of Principal any and all of the following instruments to the extent consistent with the terms and conditions of the Agreement:

> **(i)** All documents with respect to residential mortgage loans serviced for Principal by said attorney-in-fact which are customarily and reasonably necessary and appropriate to the satisfaction, cancellation, or partial or full release of mortgages, deeds of trust or deeds to secure debt upon payment and discharge of all sums secured thereby; **(ii)** Instruments appointing one or more substitute trustees to act in place of the trustees named in Deeds of Trust; **(iii)** Affidavits of debt, notice of default, declaration of default, notices of foreclosure, and all such contracts, agreements, deeds, and instruments as are appropriate to effect any sale, transfer or disposition of real property acquired through foreclosure or otherwise. **(iv)** All other comparable instruments.

This Limited Power of Attorney is effective as of the date below and shall remain in full force and effect until revoked in writing by the undersigned or termination of the Agreement, whichever is earlier.

Dated:  July 20, 2006

Wells Fargo Bank, N.A.,
as Trustee under the Agreement

Attest:

By: Christopher Regnier
Its: Assistant Secretary

By:  Reid Denny
Its:  Vice President

Unofficial Witnesses:

Dolores Branch

Angela Moore

STATE OF MARYLAND
COUNTY OF HOWARD                    ss:

I, Kathleen A. Dean, a Notary Public, certify that Christopher Regnier, personally came before me this day and acknowledged that he is the Assistant Secretary of Wells Fargo Bank, a national association organized and existing under the laws of the United States, and that by authority duly given and as the act of said national association, the foregoing instrument was signed in its name by its Vice President, Reid Denny and sealed with its corporate Wells Fargo Bank seal, and attested to by himself as its Assistant Secretary.

Witness my hand and official seal, this 20th day of July, 2006.

Notary Public: Kathleen A. Dean
My commission expires 2/1/2009

890

**Exhibit
F**

**LLS** **Litton Loan Servicing®**

4828 Loop Central Drive
Houston, Texas 77081-2226
Telephone 1-800-247-9727
Fax 713-960-9561
www.littonloan.com

# Payoff Statement

Send to:    Maria Caicedo

Email:carolyn.mcfadden@littonloan.com

STATEMENT DATE: 4/16/2008
**GOOD THROUGH DATE:4/30/2008**
**This payoff quote is <u>not valid</u> if the good through date is in the past.**

**Loan Number: 14395081**
Borrower Name: Maria Caicedo
Property Address: 85 Brainerd St., U
            Allston, MA 02134

PSV/INV/Pool/ 208/890/890001
Loan Type      CONV
FHA/VA/PMI#
INTEREST PAID TO DATE:03/01/2005
INTEREST RATE: 0.0695

This statement reflects the amount needed to prepay this mortgage in full. <u>Only cashiers checks or certified funds are acceptable for final payment.</u>  Monthly mortgage payments should continue to be made in the normal manner, as the fact that the loan is in the process of being paid in full does not affect the responsibility for making scheduled payments.

Interest is collected to the date of the receipt of the payoff funds. Please allow for mailing time.  Any funds received in excess of the payoff amount will be refunded 30 days after the payoff date. Excess escrow funds are refunded 15 days after the payoff date.

| | |
|---|---|
| Interest Due | $59,805.02 |
| Quote Fee | $15.00 |
| Principal Balance | $214,997.14 |
| Corporate Advance | $4,340.34 |
| Escrow | $16,817.12 |
| Total Late Charges | $223.56 |
| **Total Due** | **$296,198.18** |

If paid after 4/30/2008please add if applicable

| | |
|---|---|
| **MONTHLY LATE CHARGE** | **$44.05** |
| **PER DIEM INTEREST** | **$40.94** |

**GENERAL ACCOUNT INFORMATION**

| | |
|---|---|
| ESCROW BALANCE | ($16,817.12) |

| | |
|---|---|
| P&I | $1,468.20 |
| MONTHLY ESCROW DEPOSIT | $686.39 |
| **TOTAL MORTGAGE PAYMENT** | **$2,154.59** |

| ESTIMATED ESCROW DISBURSEMENTS | DUE DATE | AMOUNT |
|---|---|---|
| City Tax | 7/1/2008 | $5,000.13 |

**Our payoff amount is subject to change in the event that any additional charges become due, which have not been included herein, or if any of the payoff figures provided herein have been inadvertently miscalculated or omitted.**

1753681

## Corporate Advance Detail/Breakdown

| Transaction Date | Description | Amount |
|---|---|---|
| 10/6/2005 | Bpo Fee | $100.00 |
| 10/7/2005 | Advances - Costs | $25.00 |
| 10/7/2005 | Filing Costs | $255.00 |
| 10/7/2005 | Service Costs | $8.84 |
| 10/7/2005 | Title Costs | $290.00 |
| 10/7/2005 | Attorney Fees | $775.00 |
| 11/29/2005 | Inspection Fee | $10.50 |
| 12/17/2005 | Attorney Fees | $156.00 |
| 12/17/2005 | Attorney Fees | $780.00 |
| 2/2/2006 | Attorney Fees | $136.50 |
| 4/4/2006 | Attorney Fees | $156.00 |
| 4/4/2006 | Attorney Fees | $156.00 |
| 4/4/2006 | Attorney Fees | $253.50 |
| 5/9/2006 | Attorney Fees | $175.50 |
| 6/26/2006 | Bpo Fee | $92.00 |
| 9/26/2006 | Attorney Fees | $19.50 |
| 9/26/2006 | Attorney Fees | $124.50 |
| 3/27/2007 | Bpo Fee | $100.00 |
| 5/31/2007 | Attorney Fees | $58.50 |
| 5/31/2007 | Attorney Fees | $253.50 |
| 12/6/2007 | Bpo Fee | $100.00 |
| 1/30/2008 | Attorney Fees | $314.50 |
| **Corporate Advance Total** (from page one) | | **$4,340.34** |

Payoff Statement
(Continued)

**\*\*\*\*ACCEPTANCE OF FUNDS IS SUBJECT TO REQUIREMENTS LISTED BELOW\*\*\*\***

We reserve the right to amend any portion of this statement at any time. All balances may change if a payment becomes due, a payment is made, a payment is stopped or rejected by the institution for insufficient funds or if amounts are advanced by Litton Loan Servicing LP that become due and payable under the loan documents. We will also continue to pay escrow disbursements as they become due, unless we are notified otherwise in writing. <u>Uncertified funds and wire transfers are not acceptable.</u> Litton Loan Servicing LP will not incur expense in connection with this transaction.

If the borrower is currently set up on ACH (Automatic Payment Drafting), Litton Loan Servicing LP must be notified IN WRITING at least thirty (30) business days prior to the last withdrawal. <u>This notification must be in writing, not by telephone.</u>

Escrow refunds, if applicable, will be refunded within thirty (30) days of payoff. If there is a change of address, please provide the new mailing address with the payoff funds. Escrow refunds will be made payable to the borrowers of record on the Payoff Statement. If escrow funds are to be made payable to anyone other than the borrowers of record, please send legal documentation that will validate a change of ownership with your payoff check.

The documentation to release the lien will be prepared by the Loan Satisfaction Department of Charles A. Brown & Associates, P.C., 4620 Fairmont Parkway, #204, Pasadena, TX 77504. Their Customer Service telephone number is 1-866-941-4928.

All payoff funds must reach the Payoff Department of Litton Loan Servicing LP by 3:00 PM, CST in order to receive same-day posting. Please furnish the name of the closer, address, telephone number, and GF# on all documentation. The LOAN NUMBER MUST BE ON THE PAYOFF CHECK AND ALL CORRESPONDENCE.

**Please make remittances payable to:**          **Litton Loan Servicing LP**
                                                 **4828 Loop Central Drive**
                                                 **Houston, TX 77081-2226**
                                                 **ATTN: Payoff Department**

\*\*All overnight mail must indicate "Payoff Department" to guarantee same-day posting of funds\*\*

Contact Number: 1-800-247-9727

# NOTIFICATION OF A CHANGE OF MAILING ADDRESS FOR A PAID-IN-FULL BORROWER

**\*Please return this form with the payoff funds if the address of our borrower will be changing\***

Litton **Loan #**          _____

Property Address          _____

                          _____


## Seller's **name** and Forwarding Address:

Name:          _____

Address:          _____

                  _____

                  _____

Phone:          _____